Nancy HASTINGS et al., Plaintiffs-Appellants,

v.

G. B. BONNER, and Arthur Johnson, Individually and as agents and employees of the School Board of Wakulla County, Florida, et al., Defendants-Appellees.

No. 76–2052.

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1978.

---

Jerry D. Anker, Steven E. Silverman, David Rubin, Robert H. Chanin, Washington, D. C., Richard H. Frank, Tampa, Fla., for plaintiffs-appellants.

William F. Daniel, Tallahassee, Fla., for defendants-appellees.

Before COWEN,* Senior Judge, GOLD-BERG and AINSWORTH, Circuit Judges.

COWEN, Senior Judge:

Appellants are three former school teachers in the Wakulla County, Florida school system. Appellant Gail Hazlett taught at Sopchoppy Elementary School under Principal Gleney Bonner. Appellants Nancy Hastings and Diana Sullivan taught at Crawfordville Elementary School under Principal Arthur Johnson. At the end of the 1973–74 school year none of the three were tenured teachers under Florida law. See Fla.Stat. Ann. § 231.36(3)(a). Appellants Hazlett and Sullivan were eligible for continuing contracts (tenure) for the next school year (1974–75). Appellant Hastings was eligible only for another annual contract. None of the three teachers, however, received contract renewals for the 1974–75 school year. The Superintendent of Wakulla County Schools, William Payne, wrote to each appellant that he was not renewing her contract, because he wished to improve the instructional program at her school by replacing her with a more qualified teacher.

Appellants filed suit, pursuant to 42 U.S.C. §§ 1983 and 1985 (1970), against Superintendent Payne, Principals Bonner and Johnson, and the Wakulla County School Board, in the United States District Court for the Northern District of Florida. They alleged denial of their constitutional rights to freedom of speech, assembly, and association. At the conclusion of a trial without a jury the court entered a verdict in favor of the school board. Later, in a memorandum opinion, the district judge held "the evidence will not support a finding that [Principal Bonner] abridged in any way the freedom of speech or association" of Mrs. Hazlett; that Principal Johnson "had more than sufficient justification for not recommending Hastings and Sullivan for further employment," and that the evidence did not establish that his recommendations were "impermissably motivated." With respect to Superintendent Payne, the court found that, although he was guilty of

"flimsy after-the-fact-rationalization" in his stated reasons for not rehiring Mrs. Hastings and Mrs. Sullivan, and although "the instant case is replete with elements" which would support Hastings' and Sullivan's position that the nonrenewal resulted from their exercise of First Amendment rights, Payne did not violate those rights "since there is more than ample evidence that they exercised their First Amendment liberties in a manner that interfered with the normal operation of the school." The court further held with respect to Mrs. Hazlett's complaint against Mr. Payne "absent a stronger showing that the exercise of some protected right was involved, the court finds no actionable impropriety in [Mrs. Hazlett's] termination for insubordination."

We agree with the trial judge's observation that this is a troublesome case in which witnesses for both sides contradicted one another at almost every turn. We recognize, too, that in such a situation, he correctly determined that "conclusions must necessarily rest not so much on proven facts as on logical inferences and the demeanor of witnesses." However, after a careful review of the record, we hold, with regret, that it is necessary to remand the case to the district court for the making of additional findings of fact and conclusions of law. We think there are two reasons which compel this conclusion: first, the trial judge failed to resolve a crucial conflict in the evidence regarding the alleged insubordination of Mrs. Hazlett, and second, there is a substantial doubt that the court applied the correct legal standard in holding that the disruptive conduct of Mrs. Hastings and Mrs. Sullivan precluded their rights to recover. See Mt. Healthy Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), where the Supreme Court remanded to the district court a case raising questions similar to those at bar.

## I. BACKGROUND

The background for this litigation lies in the activity of the three appellants in the Wakulla County Education Association

---

* Senior Judge of the Court of Claims, sitting by designation.

(WCEA). The WCEA was an affiliate of the Florida Education Association (FEA), which was a further affiliate of the National Education Association. During the 1973–74 school year, the WCEA was the focus of controversy in the Wakulla County school system. This controversy centered on the confrontative tactics advocated and used by some WCEA members, apparently including the appellants, to promote the goals of those members. The goals included the achievement of better teaching conditions, salaries, and other benefits for association members. One hotly disputed issue, which arose in the argument over methods available to achieve these goals, was an end-of-the-school-year statewide vote taken among representatives of the various county associations such as the WCEA, to determine whether the FEA should merge with the American Federation of Teachers, an affiliate of the AFL–CIO, and as a result forego its affiliation with the NEA.

Appellants apparently played key roles in steering the WCEA on its chosen course during the 1973–74 school year. Mrs. Hazlett was the WCEA building representative at Sopchoppy Elementary School, and also served successively as secretary, vice-president, and president of the WCEA. Mrs. Hastings was chairman of the WCEA political action and membership committees, and Mrs. Sullivan chaired the public relations committee. Appellants admit that one of their assumed responsibilities was the joint authorship, with Mike Makowsky, an FEA counselor and organizer of a WCEA newsletter which was openly critical of Superintendent Payne.

At trial each appellant testified that during the 1973–74 school year she was warned in some fashion by her respective principal that Superintendent Payne was unhappy with her WCEA activities, and unless she disassociated herself from those efforts, her contract might not be renewed for 1974–75. A fourth teacher, a Mrs. Gowdy, also testified Principal Johnson had informed her that Mrs. Hastings and Mrs. Sullivan were in peril of losing their employment on account of their WCEA activities. Messrs. Bonner, Johnson, and Payne all denied that

the above conversations took place. Although the trial judge did not specifically resolve this conflicting testimony in favor of either side, he rejected Payne's testimony that Mrs. Hastings and Mrs. Sullivan were replaced in order to upgrade the system by selecting more qualified teachers.

One important fact not in dispute is that during 1973–74, all three appellants performed their classroom duties satisfactorily. Principal Johnson rated Mrs. Hastings an "excellent" teacher, and Mrs. Sullivan a "fine" teacher. Principal. Bonner rated Mrs. Hazlett a "good" teacher.

## II. MRS. HAZLETT'S CLAIM

### A. Obscurity in the trial court's findings.

We first consider the court's findings and holding with respect to Mrs. Hazlett. The record is clear that during the 1973–74 school year Mrs. Hazlett was warned on occasion by Principal Bonner that her prospective appointment as a continuing contract teacher for the 1974–75 school year was in danger because she failed to communicate sufficiently with the administration about her classroom operation, and because her activities in the WCEA were unprofessional. During the course of the year, however, Mrs. Hazlett progressed toward the resolution of this deficiency to such an extent that Mr. Payne and Mr. Bonner agreed that Mr. Payne would offer her at least another annual contract for 1974–75, in lieu of the continuing contract for which she was eligible. Mr. Payne drafted the letter offering Mrs. Hazlett annual employment for 1974–75 by simply requesting her to check one of two boxes accepting or rejecting the offer and to mail the letter back to him by March 29, 1974.

Mrs. Hazlett balked at this request. She requested a meeting with Mr. Payne at 4:30 p. m. on the afternoon of March 29, to discuss the reasons why she was not being offered a continuing contract. Mr. Payne agreed to grant this request. To Mr. Payne's surprise, however, Mrs. Hazlett appeared at his office at the appointed time on March 29 accompanied by two other

persons, her husband and Mike Makowsky, the FEA counselor and organizer who had previously participated in the joint authorship of newsletters critical of Mr. Payne.

That all of the above events took place, both sides agree. Now comes the important conflict in the evidence which the district court failed to resolve. The trial judge stated the facts of the March 29 meeting as follows:

> * * * On March 29, 1974, Mrs. Hazlett appeared at the Superintendent's office, accompanied by her husband and a local representative of the state teacher organization. She had not advised the Superintendent that she wished these gentlemen to be present during the interview. *On being apprised of this fact, Mr. Payne refused to see Mrs. Hazlett and subsequently revoked the offer of a fourth year of employment.* * * * (Emphasis added.)

Appellants view this as an unqualified finding that Mr. Payne refused to see Mrs. Hazlett and withdrew his offer of employment to her for the sole reason that she dared to bring two unannounced representatives to his office and to request their presence at a meeting previously scheduled with him. Based on this interpretation, appellants argue that we must conclude as a matter of law that Mr. Payne's withdrawal of an offer of employment constituted a violation Mrs. Hazlett's implied First Amendment right to freedom of association. However, the district court held that there was "no actionable impropriety in her [Mrs. Hazlett's] termination for insubordination." If we adopted the appellants' contention, we would be rewriting the trial judge's opinion for our own purposes in a situation where common sense and a review of the record betrays the reality that we might be drawing an unwarranted meaning out of obfuscation.

█ The critical credibility determination which the trial court failed to make with respect to the meeting of March 29 is

whether Mrs. Hazlett refused to obey a direct order from Mr. Payne that she speak with him alone, or whether she merely declined an invitation from Mr. Payne to speak with him unaccompanied by her husband and Mr. Makowsky. Mr. Payne testified that she refused to obey his instruction, while Mrs. Hazlett testified that she merely declined the opportunity to meet with Mr. Payne outside the presence of her witnesses. Obviously if the trier of fact, who observed the demeanor of the witnesses, finds that Mr. Payne gave Mrs. Hazlett an order which she disobeyed, her case is easily resolved. Regardless of her freedom to associate, a teacher may not ignore a direct order of a superintendent to communicate with him while she is in his employ.[1] If, however, the court believes Mrs. Hazlett's testimony that she merely declined an invitation to speak with Mr. Payne on his terms, then the court should find precisely why Mr. Payne did not renew her contract after the March 29 meeting. In particular, the court should state whether or not he refused to renew her contract wholly, or in part, because she brought two unannounced representatives to his office and requested their presence at the meeting.

The record is clear that Mrs. Hazlett did try to renew her contract on March 29, before she left Mr. Payne's office, by checking the box on the letter designated for acceptance of the one-year offer. Her acceptance was conditional, because below the checkmark designating her acceptance she penned in:

> Provided that I or my representative first have the opportunity to address the school board in regard to why a continuing contract was not offered to me and the reasons for the denial of that contract to me.

**B. Applicable legal precedents—law of freedom of association.**

█ If the court does find that Mr. Payne did not renew Mrs. Hazlett's contract

---

1. Appellants apparently concede that Mr. Payne was under no obligation to meet with Mrs. Hazlett and her two representatives, cit-

ing *N.L.R.B. v. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), appellants' main brief at p. 26.

solely, or even partially, because she brought two unannounced representatives to his office and requested their presence at the meeting, the decisional law compels a conclusion that Mrs. Hazlett has been denied her First Amendment liberty to associate.

■ It is now well established that even if a teacher or other public employee does not have a contractual right to continued employment, he may not be dismissed nor denied renewal of his contract

> * * * on a basis that infringes his constitutionally protected interests * *. For if the government could deny a benefit to a person because of his constitutionally protected speech *or associations,* his exercise of those freedoms would in effect be penalized and inhibited. * * *

*Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972) (emphasis added), and cases cited therein. Moreover in this circuit the rule is clear that even if Mr. Payne's reassessment of Mrs. Hazlett's employment status and his decision not to renew her contract was only "partially in retaliation" for her exercise of her freedom of association, he has violated her constitutional rights. *Fluker v. Alabama State Board of Education,* 441 F.2d 201, 210 (5th Cir. 1971). Another circuit has stated this rule succinctly:

> * * * a discharge motivated only in part by demonstrable retaliation for exercise of speech and associational rights is equally offensive to the Constitution. * * *

*Simard v. Board of Education,* 473 F.2d 988, 995 (2d Cir. 1973). The Supreme Court has approved this standard by restating a lower court's ruling that a school board may not refuse to renew a teacher's contract when his constitutionally protected First Amendment conduct is "a 'substantial factor'—or, to put it in other words, * * * a 'motivating factor' in the Board's decision not to rehire him." *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).[2]

With respect to the rather narrow question whether a superintendent's refusal to renew a contract because a teacher brings unannounced representatives to a meeting and requests their presence at that meeting constitutes a violation of the teacher's First Amendment freedom of association, we have found no case directly in point. The Supreme Court has held, however, in other disputes involving freedom of association that:

> Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs. While the freedom of association is not explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition. * * *

*Healy v. James,* 408 U.S. 169, 181, 92 S.Ct. 2338, 2346, 33 L.Ed.2d 266 (1972).

■ In *Beilan v. Board of Education,* 357 U.S. 399, 405, 78 S.Ct. 1317, 1321, 2 L.Ed.2d 1414 (1958), the Supreme Court held:

> By engaging in teaching in the public schools, petitioner did not give up his right to freedom of * * * association. * * *

The right of free association may not be abridged merely because its exercise may be annoying to some people, *Coates v. City*

---

**2.** In the *Mt. Healthy* case, the Supreme Court remanded the case to the district court for a determination whether the school board still "in fact would have reached" its decision not to rehire the teacher "had not the constitutionally protected incident * * * occurred." The Court held if the district court determined on remand that the teacher would not have been rehired regardless of the fact that his constitutionally protected conduct played a "substantial part" in the Board's decision, then the teacher's First Amendment rights had not been denied. If the district court, on remand, determines that Mrs. Hazlett was not rehired because she refused to obey Mr. Payne's order, the decision not to rehire was lawful. But if the court decides that Mrs. Hazlett was not rehired because she brought unannounced representatives and requested their presence at the meeting, she would be entitled to relief unless the court also finds that the appellees have shown by a preponderance of the evidence that Mrs. Hazlett would nevertheless not have been rehired for reasons wholly apart from the exercise of her constitutionally protected conduct.

*of Cincinnati*, 402 U.S. 611, 615, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

The above cited decisions of the Supreme Court seem to define freedom of association broadly enough that a superintendent's refusal to renew a contract for the reasons alleged by appellant Hazlett is precluded on constitutional grounds.[3]

■ The one case cited by the district court to support its legal conclusion that there was "no actionable impropriety in her [Mrs. Hazlett's] termination for insubordination" is *Whitsel v. Southeast Local School District*, 484 F.2d 1222 (6th Cir. 1972). In *Whitsel*, the court held that a teacher who alleged he was fired for exercising his freedom of speech was in fact fired, because he was insubordinate in making remarks that encouraged a group of 400 demonstrating students to continue their unauthorized assembly in the school gymnasium. He spoke to the students after the superintendent had ordered them to return to their classes. He did not advise them to obey the superintendent's instructions; instead he said there might be political overtones in the dismissal of a student-teacher. *Whitsel* will not support a conclusion that there was no actionable impropriety in this case unless the district court on remand finds as a fact that Mr. Payne did not renew Mrs. Hazlett's contract, because she was insubordinate in refusing to obey his order to meet with him outside the presence of her companions. We cannot discover such an explicit finding in the district court's memorandum opinion.

## III. THE CLAIMS OF MRS. HASTINGS AND MRS. SULLIVAN

In his opinion, the trial judge recognized that Superintendent Payne's decision to terminate Mrs. Hastings and Mrs. Sullivan was based, at least to a large extent, on their association activities. The court was also aware of their First Amendment rights and relied on the Supreme Court's decision in *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968), which declared:

* * * The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

In *Pickering*, the Supreme Court concluded that the plaintiff, a teacher, had been unconstitutionally dismissed because his public statements which were critical of the administration had neither been shown, nor could they have been presumed "to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally." (*Id.* at 572–73, 88 S.Ct. at 1737.)

■ Employing similar language, the district court here found that there had been no violation of the civil rights of Mrs. Hastings and Mrs. Sullivan "since there is more than ample evidence that they exercised their First Amendment liberties in a manner that interfered with the normal operation of the school." In making this ultimate finding, the trial judge referred to and relied on hearsay and other objectionable evidence which was received without objection. Much of this testimony was given by Principal Johnson. Although this circumstance compounds the difficulty of deciding this case, there is no doubt that the district court had the right to rely on such evidence. The rule is clear that:

* * * If the evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. * * * The *incompetent evidence*, * * * *alone* or in part *may support a verdict* or finding. * * * [Emphasis added.]

McCormick, Evidence § 54, at 125–26 (2d ed. 1972). Professor McCormick has noted

---

**3.** For a discussion of teachers' rights of free association, *see* the decision of this circuit in *Orr v. Thorpe*, 427 F.2d 1129 (5th Cir. 1970).

There the decision of the district court was reversed and remanded for trial.

that this "principle * * * is most often invoked in respect to hearsay * * *." *Id.*

Upon a review of the entire record, and taking into account the extensive conflicts in the testimony of the witnesses, we cannot agree with appellants that the district court's ultimate finding regarding the disruptive activities of the two teachers is clearly erroneous.

That does not end the matter, however. Since *Pickering*, the Supreme Court and this court have adopted a different test for determining the extent of the disruption of school activities that must be shown to override the exercise of First Amendment rights. In *Tinker v. Des Moines School Dist.*, 393 U.S. 503, 509, 89 S.Ct. 733, 738, 21 L.Ed.2d 731 (1969), the Supreme Court quoted from a prior holding of this court, *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966), and held that if the exercise of a First Amendment right is to be prohibited, the school must show that the First Amendment activity would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." Although *Tinker* was concerned with the First Amendment rights of students rather than teachers, there is no doubt that this circuit has adopted and now applies the *Tinker* test in cases involving the First Amendment rights of teachers. *See Fluker v. Alabama State Board of Education*, 441 F.2d 201, 206 (5th Cir. 1971).[4]

It is apparent that the test adopted in the *Tinker* and *Fluker* cases is more demanding than a test based on activities which "interfered with the normal operation of the school." Since we can find nothing in the decision of the district court which clearly shows that the legal standard required by the *Tinker* and *Fluker* cases was applied, it will be necessary for the district court on remand to review and reassess the evidence in this case and to make additional findings of fact and conclusions of law on the issue as to whether the activities of Mrs. Hastings and Mrs. Sullivan materially and substantially disrupted the operation of the school.

## IV. CONCLUSION

For the reasons and to the extent stated above, the judgment of the district court is vacated and the case is remanded to that court for further proceedings consistent with this opinion.

GOLDBERG, Circuit Judge, specially concurring.

I concur in the majority opinion. I only wish to make explicit one additional standard to guide the district court on remand which I believe to be mandated by Judge Cowen's analysis. In the discussion of Mrs. Hazlett's claim, Judge Cowen correctly states that if Superintendent Payne's decision not to renew Mrs. Hazlett's contract was even "partially in retaliation" for the exercise of her associational rights to bring unannounced representatives to the meeting and to request that they be allowed to attend, that decision violates her constitutional rights. The court concludes from this general proposition that if the district court finds as a factual matter that Mrs. Hazlett merely declined an invitation to speak with Mr. Payne on his terms, then a further finding that Mr. Payne refused to renew her contract wholly or in part for Mrs. Hazlett's exercise of her associational rights would require the conclusion that Mrs. Hazlett's constitutional rights had been violated. I wish to add that even if the district court finds that Mrs. Hazlett did in fact disobey an order from her superior to meet with him alone concerning a subject within the scope of their employment relationship, it may enter a verdict in favor of the school board only if it further finds that her constitutionally protected first amendment conduct was not "a motivating fac-

---

**4.** For other cases in which the *Tinker* standard has been applied in First Amendment suits brought by teachers, *see Pred v. Board of Public Instruction of Dade County, Fla.*, 415 F.2d 851, 858–59 (5th Cir. 1969); *Bertot v. School District No. 1*, 522 F.2d 1171, 1183 (10th Cir. 1975), and *Russo v. Central School District No. 1*, 469 F.2d 623, 631–32 (2d Cir. 1972).

tor" in the non-renewal decision. I believe that this proposition is mandated by the court's analysis and implicit in its holding.

AINSWORTH, Circuit Judge, dissenting:

I see no need of remanding this case to the district court for further proceedings. In my view the district judge thoroughly discussed the applicable law and facts, made adequate findings in a detailed, well-reasoned opinion. I would not disturb his findings or the conclusions he reached which denied relief to plaintiff teachers whose conduct was seriously disruptive in the school system and worthy of the dismissal as nontenured teachers which they received.