**Benny B. BARRETT, Plaintiff-Appellee Cross-Appellant,**

v.

**Carl THOMAS, Sheriff, Defendant-Appellant Cross-Appellee.**

No. 79–3021.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 10, 1981.

Rehearing En Banc Denied
Sept. 1, 1981.

---

Henry M. Wade, Criminal Dist. Atty., Dallas County Texas, Dallas, Sue L. Lagarde, Asst. Dist. Atty., Dallas, Tex., for defendant-appellant, cross-appellee.

James C. Barber, Steven B. Thorpe, Dallas, Tex., Charles J. Baldree, Le Card, Tex., for plaintiff-appellee, cross-appellant.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal, argued and decided in tandem with *Collins v. Thomas,* 649 F.2d 1203 (5th Cir. 1981), arises from disputed personnel actions taken by Carl Thomas during his tenure as Sheriff of Dallas County, Texas. It addresses the constitutionality of certain rules regulating the conduct of employees in the Dallas County Sheriffs' Office, the merits of 42 U.S.C. § 1983 claims brought by former deputy sheriffs alleging that they were demoted or fired by Thomas for their political affiliations, and Dallas County's liability for a 42 U.S.C. § 1988 attorneys' fees award against Sheriff Thomas. We vacate the district court's injunction against § 15 of the Sheriff's Office Code of Conduct; we believe § 15 is facially unobjectionable and constitutional as applied here. We reverse the district court's determination that Dallas County is not liable for the § 1988 award against Thomas and render judgment holding the County jointly and severally liable with the Sheriff for the attorneys' fees award. We affirm the district court's disposition of the remaining issues presented on appeal.

## I. The Facts

Benny Bob Barrett joined the Dallas County Sheriff's Office ("the department") as a patrolman in May 1966. Barrett had compiled a solid work record and advanced to the position of sergeant in the Criminal Investigation Division when Republican Carl Thomas defeated Clarence Jones, the Democratic incumbent, in the November 1976 election. After taking office, Thomas transferred Barrett, a Jones supporter, laterally to the Civil Warrants Division in March 1977. Later, in August of the same year, he was demoted to the position of detention officer.

Peeved by his demotion, which entailed reductions in pay, benefits, and prestige, Barrett told a newspaper reporter on August 20 that Thomas was a "paranoid" person with a "Hitler mentality". These remarks were quoted verbatim in a newspaper story published the same day. On August 22, Barrett went before a public meeting of the Dallas County Commissioners' Court to criticize Thomas for conducting a political purge in the Sheriff's Office. On August 23, Thomas fired Barrett. The discharge notice stated that Barrett's publish-

ed remarks violated Dallas County Sheriff's Office Code of Conduct §§ 12 & 15.[1]

Barrett brought this § 1983 class action on behalf of all sheriff's office employees who had been demoted or fired by Sheriff Thomas for supporting Sheriff Jones in the 1976 election. His original complaint alleged that, in firing or demoting employees who did not support him in the 1976 election, Thomas abridged first amendment speech and associational rights. The complaint also challenged the constitutionality of personnel regulations governing public statements by Sheriff's Office employees, see n. 1, *supra*, on grounds of vagueness, overbreadth, and as impermissible prior restraints on protected speech.[2]

After issuing a preliminary injunction against enforcement of the challenged personnel regulations and certifying the plaintiff class, the trial judge presided over a jury trial on the merits in January 1979. In response to a series of interrogatories, the jury found that political considerations had motivated Thomas to transfer, demote, or discharge various plaintiff class members.[3]

---

1. § 12 provides: Gossip and Confidential Information

   Gossiping about affairs of the department, or the members of it, making unauthorized public statements, or the unauthorized revealing of confidential information of any kind, is prohibited.

   a. No member of the department shall make known any information concerning the progress of an investigation, a known or reported law violation, or condition against which action is to be taken, at a future time, or any proposed Sheriff operation of any type, to any person not authorized to receive it.

   b. It is expressly forbidden to give any lawyer, bondsman, or the agent of either, or any other person unauthorized information regarding prisoners in confinement.

   § 15 provides: Willful Disobedience or Insubordination

   No member of the department, to whom a lawful order is addressed by a supervisory officer, shall willfully disobey that order, and no conduct subversive of the good order or discipline of the department will be tolerated.

   Continuous or willful violations of this Code of Conduct are punishable under this rule.

   a. no deputy shall use abusive, insulting, or indecent language to a supervisory officer.

   Within a week of Barrett's firing, the Sheriff issued General Rules "to clarify," Thomas testified, the conduct proscribed by §§ 12 & 15. Thomas conceded on direct examination that, although these Rules were not in writing at the time Barrett was discharged, he considered them to be effective and enforceable against Barrett. Record, vol. III, at 95. Rules 1 and 2 provide:

   1. No employee of this department will address any statement or remark to any member of the news media that is or could be of a controversial nature. All requests will be referred to the Sheriff even during my absence.

   2. No member of this department will discuss any matters pertaining to policy or procedure of this department with any elected official or department head.

2. The complaint also joined a pendant state law claim for defamation based on a press release issued by Thomas indicating that Barrett had been fired for being a "lazy individual." After prolonged deliberation, the jury was unable to reach a verdict on Barrett's defamation claim. The trial court then dismissed the pendant claim without prejudice.

3. Although Thomas failed to raise the objection at trial, he asserts on appeal that the trial court incorrectly worded the jury interrogatory asking whether the plaintiffs were wrongfully transferred, demoted, or discharged for exercising their constitutionally protected rights of speech and political association. Specifically, Thomas contends that the charge was defective because it inquired of the jury whether the plaintiffs' political affiliations and activities were "motivating factors" in their transfers, demotions, or discharges. The court advised the jury that the plaintiffs bore the burden of proof on this question. The Sheriff insists that a proper formulation of the question would have made clear that plaintiffs must prove that their constitutionally protected activities were either the "primary" or the "sole" cause of their firings or demotions.

   These contentions are devoid of legal merit. In addition to the inquiry whether political considerations were "motivating factors" in the challenged personnel actions, the court submitted for the jury's consideration this question:

   Do you find from a preponderance of the evidence that the defendant would have reached the same decision as to the class members' transfer, demotion or discharge absent consideration of the class members' political party affiliation, the failure to support the defendant, or the support of the defendant's opponent in the political campaign? (Burden of proof on defendant)

   In its special verdict, the jury answered "no" to this question. As a matter of law, this formulation of the issue comports with the Supreme Court's holding regarding the nexus a public

The jury determined that political considerations were a motivating factor in Barrett's transfer and demotion, but that Thomas did not discharge Barrett for political reasons. The jury was instructed that the scope of law enforcement officers' free speech rights is circumscribed by a balancing test weighing the public interest in regulating such speech against the speaker's private interest in making the comments. Based on this instruction and the Sheriff's concession that Barrett was fired for calling Thomas a "paranoid" person with a "Hitler mentality," the jury determined that Barrett's criticism of Thomas was not protected speech.

On the basis of these jury findings, the district court struck down each of the challenged personnel regulations for vagueness and overbreadth. The court permanently enjoined further enforcement of the regulations and decreed that certain members of the plaintiff class who were fired or demoted for their political affiliations were entitled to reinstatement with back pay. The trial judge accepted the jury's verdict that Thomas had not fired Barrett for his political associations and that Barrett's remarks to the press were constitutionally unprotected.[4]

While the court found that Barrett was entitled to back pay compensating for his politically-inspired demotion, it denied him reinstatement to his former position. Attorney's fees were awarded to the prevailing plaintiffs. An April date was set for a hearing to fix the amounts of back pay and interest due each individual member of the plaintiff class and to review the attorney's fee request filed by the plaintiffs' attorney.

One week before the scheduled April hearing—more than three months after the jury trial—Dallas County moved to intervene. The County argued that an adjudication of Thomas' liability in its absence would impair its interest in protecting the County treasury against the plaintiffs' claims. The plaintiffs opposed Dallas County's intervention, contending that the County's motion was untimely, that the County's expressed disclaimer of liability for the sheriff's personnel decisions negated its assertion of an interest in the outcome of the April hearing, and that the County interests were adequately represented by the county district attorney's representation of the sheriff, who shared the County's interest in minimizing liability to the plaintiffs. Stressing that County intervention would pose the threat of a prejudicial delay at a time when the lawsuit was nearly resolved, the district court denied the motion to intervene.[5]

The district court then proceeded with the scheduled April hearing. In a judgment specifying the terms of relief granted to the members of the plaintiff class, the court, on May 20, ordered reinstatement of nine demoted or discharged employees and fixed the amounts of back pay and interest due fourteen members of the plaintiff class. The court fixed the plaintiffs' attorney fee award at $34,015, but specified that the judgment "is entered against Carl Thomas, Sheriff, and draws no conclusions concerning the liability, if any, of the County of Dallas, Texas, for complying with the provisions of the judgment." Subsequently, in August, Judge Porter decided that the at-

---

employee plaintiff must prove between his exercise of first amendment rights and an adverse personnel action. *Doyle v. Mt. Healthy City Board of Education*, 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977) (plaintiff must prove that protected activities were a "substantial factor" in the decision to discharge).

In any event, Fed.R.Civ.P. 51 precludes our consideration of this issue at the threshold. The Sheriff waived any error in the jury instructions by his failure to object at trial.

**4.** The trial judge determined, notwithstanding the jury verdict, that Barrett's comments to the

County Commissioners were protected. This finding did not obviate, however, the justification for Barrett's discharge based upon his statements to the press.

**5.** The County brought an interlocutory appeal from this decision. This Court affirmed the district court's denial of the County's intervention motion without a published opinion under F.R.A.P. 34(a) and 5th Cir. R. 18. The Supreme Court denied the County's petition for a writ of certiorari. *Weber v. Barrett*, —— U.S. ——, 101 S.Ct. 1729, 68 L.Ed.2d 218 (1981).

torney's fees award would not lie against County funds, apparently because the plaintiff had affirmatively opposed the County's attempt to intervene prior to the April hearing.

On this appeal, the Dallas County District Attorney contends, *inter alia*,[6] that, (1) the personnel regulations enjoined by the district court are constitutional; (2) the sheriff's personnel actions were permissible; (3) the Sheriff is immune from this lawsuit; and (4) the attorney's fees award was improper because the plaintiffs did not "prevail" as required by 42 U.S.C. § 1988. The plaintiffs cross-appeal the trial court's determination that Dallas County is not liable for the attorney's fees award.

## II. The Challenged Personnel Regulations

■ The district court struck down each of the four Sheriff's Office personnel rules, *see* n. 1 *supra*, challenged by the plaintiffs for overbreadth and vagueness.[7] Of course, either vagueness or overbreadth standing alone would present a fatal defect in the regulations. While the district court may well have been correct in concluding that three of the challenged regulations are "so vague that men of common intelligence must necessarily guess at [their] meaning and differ as to [their] application," *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1925), we do not reach that question with respect

to § 12 of the Sheriff's Office Code of Conduct or General Rules 1 and 2. We affirm the judgment below invalidating these regulations on the premise that these three "sweep unnecessarily broadly and thereby invade the area of protected freedom." *NAACP v. Alabama*, 377 U.S. 288, 307, 84 S.Ct. 1302, 1313, 12 L.Ed.2d 325 (1964).

■ Section 15, however, is a different story. We find the prohibitions on "conduct subversive of the good order or discipline of the department" and the use of "abusive, insulting or indecent language to a supervisory officer" facially constitutional in the context of rules regulating police department conduct. *Cf. Kannisto v. City and County of San Francisco*, 541 F.2d 841 (9th Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1552, 51 L.Ed.2d 775 (1977) (upholding police officer's discharge for breach of regulation forbidding conduct "which tends to subvert the good order, efficiency, or discipline" of the police department). While we can envision circumstances in which § 15 would be unconstitutionally vague or overbroad as applied,[8] this case does not present that problem. We are reluctant to circumscribe narrowly the sheriff's discretion in promoting the legitimate ends of "discipline, esprit de corps, and uniformity" among his law enforcement officers. *Kelley v. Johnson*, 425 U.S. 238, 246, 96 S.Ct. 1440, 1445, 47 L.Ed.2d 708 (1976).[9] There-

6. Appellants raise questions going to aspects of the relief granted to plaintiff class members. Masters, Smith, Lowther, and Baker. They also insist that the district court erred in finding, notwithstanding the jury's verdict, that Barrett's comments to the County Commissioners' Court were constitutionally protected speech. Upon review of the record and the trial judge's lucid memorandum opinion, we find these contentions meritless and summarily affirm the district court.

7. The district court declined to reach plaintiffs' claim that the regulations also imposed constitutionality impermissible prior restraints. The issue is not before us on appeal.

8. *E. g., Bence v. Breier*, 501 F.2d 1185, 1193 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821 (1975) (police department regulation prohibiting "conduct unbecoming a member and detrimental to the service"

unconstitutionally vague as applied to police officers who wrote a letter to a labor negotiator regarding terms of their employment).

Had Barrett been dismissed for his appearance before the County Commissioners on the basis of § 15 alone, we would have no hesitation in declaring the admittedly elastic language of the regulation unconstitutionally overbroad as applied. Similarly, the prohibition of acts subversive of good order might well be stretched to proscribe conduct in a manner that would render the regulation unconstitutionally vague as applied. In this case, however, Barrett's termination cited conduct (*i. e.* his remarks to the press) to which § 15 can properly be applied.

9. We are not equating the peculiar milieu of a law enforcement agency to military service. *Kannisto v. City and County of San Francisco*, 541 F.2d at 843. The Supreme Court has firm-

fore, we reverse that portion of the district court's judgment holding § 15 unconstitutional and vacate the provision of its permanent injunction barring enforcement of § 15.

■ The First Amendment freedoms infringed by the other challenged regulations are not absolute. "[T]he State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Public employers may legitimately curtail public criticism from their employees to promote efficiency, loyalty, and departmental morale, provided that these interests outweigh the employee's interests in commenting on matters of public concern. *Id.* Yet, in an effort to limit offensive speech, the public employer may not employ a prophylactic approach that prohibits constitutionally protected expression. *See Grayned v. City of Rockford*, 408 U.S. 104, 114–19, 92 S.Ct. 2294, 2302–05, 33 L.Ed.2d 222 (1972). "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 432–33, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963).

■ The overbreadth doctrine stands as a barrier against governmental regulation of speech which undertakes to limit proscribable speech but sweeps too broadly and inhibits protected expression. Parts of Section 12 and General Rules 1 and 2 collide with this barrier. Section 12 flatly prohibits "unauthorized public statements." General Rule 1 denies department employees their right to speak to reporters on any topic "that is or could be of a controversial

nature." General Rule 2 forbids discussions of Sheriff's Office policy or procedure with "any elected official." Section 12 and Rules 1 and 2 are facially overbroad. They explicitly forbid acts that departmental employees have a clear constitutional right to do. Although promoting loyalty, discipline, and efficiency in the department is a legitimate goal, these rules sweep beyond their intended ambit and impermissibly chill protected speech by the department's employees.

### III. Executive Discretion and Patronage Dismissals

The trial judge instructed the jury that Barrett and the plaintiff class bore the burden of proof in establishing that Sheriff Thomas' personnel actions were politically motivated patronage firings. The jury found that plaintiffs had carried their burden. Yet, Thomas insists that the broad discretion vested in Texas county sheriffs by Tex.Rev.Civ.Stat.Ann. art. 6869 (Vernon 1960) authorizes his conduct. Under art. 6869, deputies serve "at the pleasure" of the sheriff.

■ Sheriffs, like other elected county officials in Texas, have indisputably wide-ranging discretion in the selection of their employees. *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980). It follows that deputy sheriffs have no legal entitlement to their jobs as public employees; the sheriff may fire them for many reasons or for no articulable reason at all. Nevertheless, there are overriding limits on the sheriff's discretion in employment matters. He may not condition continuation of public employment on an employee's relinquishment of the First Amendment liberties of political belief and association. *Perry v. Sinderman*, 408 U.S. 593, 597–98, 92 S.Ct.

---

ly held that police officers enjoy the full complement of First Amendment protections. *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967). The public employer's interest in regulating the speech of police officers does not rise to the level of the government's interest in regulating the conduct of military personnel. *See Brown v. Glines*, 444 U.S. 348, 354, 100 S.Ct. 594, 599,

62 L.Ed.2d 540 (1980); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Davis v. Williams*, 617 F.2d 1100, 1104 (5th Cir. 1980) (en banc), *cert. denied*, —— U.S. ——, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980) ("[W]e are loathe to equate a municipal fireman with a paratrooper or even with such a quasi-soldier as the recalcitrant officer-dermatologist Levy.").

·

, 2697–98, 33 L.Ed.2d 570 (1972). The establishment of a political orthodoxy among public employees by an executive official is constitutionally impermissible.

The facts and legal claims presented in this case are strikingly similar to those confronted by the Supreme Court in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Republican non-civil-service employees of the Cook County, Illinois, Sheriff's Office who had been swept out of their jobs in the wave of political patronage hirings and firings following the replacement of the incumbent Republican sheriff with a Democrat sued Sheriff Elrod for depriving them of their constitutionally protected rights to affiliate with a political party of their choice. Five members of the Supreme Court joined in holding these patronage firings unconstitutional deprivations of political liberty.

The plurality opinion noted that political patronage dismissals restrict the individual liberties of belief and association at the core of the First Amendment. While these rights are not absolute, they may not be trenched upon absent a showing that the liberty-restraining patronage system furthers "some vital government end by a means that is least restrictive of freedom of belief and association...." *Id.* at 363, 96 S.Ct. at 2685. Sheriff Thomas has not pointed to a vital governmental interest served by making his deputies toe the prescribed political line. He has likewise not shown that such line-toeing is the least restrictive means of achieving a legitimate objective.

This Court recently addressed § 1983 claims regarding political patronage firings emanating from the Lake County, Florida, Sheriff's Office. *Tanner v. McCall,* 625 F.2d 1183 (5th Cir. 1980). In holding that the *Tanner* plaintiffs had failed to meet the burden of making a prima facie showing that Sheriff McCall's personnel decisions were motivated by political animus, the Court set out a legal blueprint for applying *Elrod v. Burns* principles to § 1983 claims alleging political patronage dismissals. *Tanner* contemplates a three-step inquiry

on review. First, have the plaintiffs alleged conduct that, if proven, would constitute an infringement of their constitutional rights? Second, have the plaintiffs made a prima facie showing that impermissible political animus, motivated the challenged personnel decisions? Finally, have the defendants rebutted such a showing with sufficient evidence of nonpolitical motives for the challenged conduct?

The pleadings filed by Barrett and the plaintiff class properly put in issue the constitutional claim. The trial record amply supports the jury's finding that the constitutionally protected political activities or associations of Barrett and the plaintiff class were motivating factors in Sheriff Thomas' personnel decisions. On these facts, the plaintiffs have met their burden of pleading and proving a deprivation of constitutional rights motivated by political animus. Sheriff Thomas, on the other hand, has failed to rebut this showing to the jury's satisfaction with evidence "that the same employment decisions would have been reached regardless of the constitutionally protected conduct." *Tanner v. McCall,* 625 F.2d at 1190. Therefore, affirmance of the jury's verdict is warranted.

Nevertheless, the Sheriff insists that his deputies are not entitled to the usual degree of protection from the changing tides of political fortune. Sheriff Thomas maintains that his deputies are confidential, policymaking employees within the exceptional class of public servants of whom political allegiance may be demanded. *See Elrod v. Burns,* 427 U.S. at 364–68, 96 S.Ct. at 2685–87; *Stegmaier v. Trammell,* 597 F.2d 1027 (5th Cir. 1979).

The Supreme Court recently refined the process of identifying those employees to whom the policymaker classification should be applied. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). In dismissing the labels "confidential" and "policymaker" as irrelevant, the Court declared, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office

involved." 445 U.S. at 518, 100 S.Ct. at 1295. The terms "confidential" and "policymaker" illuminate the contours of the employee class that may permissibly be subjected to a political litmus test, but any specific application of the exception must turn on the importance of political loyalty to the execution of the employee's duties.

The job duties of the plaintiff class range from clerical work to law enforcement. They are precisely the same duties performed by the plaintiffs in *Elrod v. Burns*, where the confidential and policymaking exception was deemed not to apply. Sheriff Thomas offers no satisfying justification for demanding greater political loyalty from his deputies than Sheriff Elrod was entitled to expect from his employees. In a sheriff's department with more than 700 employees, including approximately 550 deputies, the absence of political cohesion between sheriff and deputy can hardly be said to undermine an intimate working relationship. The rule of *Elrod v. Burns*, not the exception, applies here.

## IV. Immunity

Falling back to his next line of defense, Sheriff Thomas seeks "the Court's indulgence" in raising—for the first time on appeal—the defense of qualified official immunity. The Sheriff, as an executive official of Dallas County, is entitled to claim immunity from suits over good faith acts performed in furtherance of his governmental duties. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■ Qualified immunity, however, is an affirmative defense; the burden of pleading and proving it rests with the defendant. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 1924, 64 L.Ed.2d 572, 578 (1980). Sheriff Thomas' failure to interpose the immunity defense until this appeal leaves this court with no record to review on the question at the core of this defense: were Sheriff Thomas' actions based on a reasonable belief that the demotions, transfers, and dismissals were lawful? The court below did not explore this issue of fact and law—it was not raised. Powers of mystical insight, not mere "indulgence," would be necessary for us to accommodate the sheriff's request that we consider his belated immunity claim for the first time on appeal. We properly refrain from this suggested adventure in mysticism. It comes after the opportunity to litigate the issue has ended.

## V. Attorney's Fees

Finally, we turn to the parties' conflicting contentions on whether the district court should have awarded attorney's fees to plaintiffs' counsel under 42 U.S.C. § 1988, and, assuming the award was proper, whether it may be recovered from the county treasury.

■ Sheriff Thomas, clinging to the defenses we have found to be meritless, maintains that the plaintiffs are not "prevailing parties" within the meaning of § 1988. Although various members of the plaintiff class, including Barrett, did not prevail on every aspect of the relief sought, the favorable disposition of their claim for an injunction against the departmental conduct rules, discussed in Part II, *supra*, entitles the plaintiffs to recover attorney's fees under § 1988. *Coen v. Harrison County School Board*, 638 F.2d 24, 26 (5th Cir. 1981) (per curiam). The district court's decision to award attorney's fees to plaintiffs' counsel merits our affirmance. The amount awarded is not in issue.

■ The question remains whether the attorney's fees award lies against Dallas County. Sheriff Thomas possessed complete authority to hire and fire the plaintiff class members under art. 6869. Under this Texas law, his "acts or edicts may fairly be said to represent official [County] policy." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). It is now settled law that a § 1988 attorney's fees award may run against a public treasury for § 1983 violations by public officers acting in their official capacities even though the public entity is not named as a defendant in the suit. *Hutto v. Finney*, 437 U.S. 678, 699, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978).

The issue presented here is whether deviation from the *Hutto v. Finney* rule is warranted when Dallas County, whose treasury is otherwise vulnerable to the fee award, was denied an opportunity to intervene in the late stages of this litigation in part because the plaintiffs opposed the County's intervention. The district court decided that plaintiffs could not satisfy their attorney's fee award against the County treasury. While § 1988 vests discretion over a fee award in the trial court, the prevailing party is ordinarily entitled to recover a fee unless special circumstances render the award unjust. *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978). Finding no justification here for denying the prevailing plaintiffs their attorneys fees, we reverse the district court's refusal to hold Dallas County jointly liable with Sheriff Thomas for the fee award.

Measured against the standards for timely Fed.R.Civ.P. 24 intervention established in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977), Dallas County's motion to intervene was clearly tardy. This suit was pending for two years and had been tried on the merits before the County's motion was filed. Moreover, the County's interests were adequately represented at each stage of the proceedings by the county district attorney's representation of Sheriff Thomas. *Cf. Hutto v. Finney*, 437 U.S. at 699, 98 S.Ct. at 2578 (stressing that the State of Arkansas' interests had been represented throughout the litigation by the State Attorney General's representation of the Department of Corrections officials). The denial of the County's motion to intervene and the plaintiffs' opposition to the intervention do not render an award running against the County unjust under these circumstances.

Dallas County stands to suffer no more severe budgetary disruption than any public entity held liable under *Hutto v. Finney* for the § 1983 violations of its official policymakers. Nothing the Supreme Court's observations on the inherent unfairness of awarding attorney's fees against the public officials individually without permitting the claim to run against the public entity, *Hutto v. Finney*, 437 U.S. at 699 n. 32, 98 S.Ct. at 2578 n. 32, we hold that the district court abused its discretion in refusing to enter judgment allowing the attorney's fees award to run against Dallas County. Therefore, we reverse and render judgment holding Dallas County jointly and severally liable for the § 1988 attorneys fees awarded plaintiffs' counsel in this action.

To summarize our holding, we affirm the judgment below in all but two respects. We vacate, the portion of the trial court's injunction invalidating § 15 of the Sheriff's Office Code of Conduct. We reverse and render judgment on Dallas County's liability for the § 1988 attorneys fees award to plaintiffs' counsel.

AFFIRMED IN PART; VACATED IN PART; REVERSED AND RENDERED IN PART.

JOHN R. BROWN, Circuit Judge, concurring:

I concur fully in sections I through IV of the Court's opinion, but specially concur in section V because bound by *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980), repeated in *Van Ooteghem v. Gray*, 628 F.2d 488 (5th Cir. 1980).[1]

My problem is that in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), finding county or municipal entities to be a "person" under § 1983, the Supreme Court confines this new-found liability to situations in which the action represents official policy, not just the unconstitutional act of an officer or agent of the entity.[2]

---

1. Vacated on grant of Rehearing En Banc now pending before the full Court.

2. The Court stated:

    We conclude, therefore, that a local government may not be sued for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy

It seems incongruous to me that the Supreme Court meant to hold that Congress intended action to be that of the entity as a sort of "official" governmental policy when the officer-agent is acting in a crass, flagrant violation of established constitutional rights. Especially is this true since, under *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), such an official (and hence the City, County entity) is denied the defense of good faith immunity when sued in an official capacity. *See Universal Amusement Co. v. Hofheinz*, 646 F.2d 996, 997 (5th Cir. 1981); *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980).

The public treasury is made to bear the consequences of actions by an officer-agent no matter how flagrant or spectacular the unconstitutional conduct might have been on the theory that somehow such person is carrying out the official governmental policy of the entity.[3]

inflicts the injury that the government as an entity is responsible under § 1983. 98 S.Ct. at 2038.

**3.** Lurking also is the question of the Eleventh Amendment, which, for the present, I do not discuss.