**Robert COLLINS, et al.,**
**Plaintiffs-Appellees,**

v.

**Carl THOMAS, Sheriff,**
**Defendant-Appellee,**

v.

**DALLAS COUNTY, et al.,**
**Intervenors-Appellants.**

No. 79–3360.

United States Court of Appeals,
Fifth Circuit.
Unit A

July 10, 1981.

Rehearing En Banc Denied
Aug. 31, 1981.

**1204**

Earl Luna, Thomas V. Murto, III, Dallas, Tex., for intervenors-appellants.

James C. Barber, Steven B. Thorpe, Dallas, Tex., for Collins et al.

May, Herridge & Emerson, Cecil Emerson, Dallas, Tex., for Thomas.

Before BROWN, THORNBERRY and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal was argued and is decided in tandem with *Barrett v. Thomas,* 649 F.2d 1193 (5th Cir. 1981), a related dispute over personnel decisions in the Dallas County Sheriff's Office during Sheriff Carl Thomas' regime. Sheriff Thomas fired Robert Collins, Robert Knowles and Ross Bracey from their supervisory positions with the Sheriff's ,Office in March 1979. The three deputies joined in filing this lawsuit against Sheriff Thomas alleging that they were discharged in violation of their civil rights secured by 42 U.S.C. §§ 1983 & 1985. The plaintiffs' original complaint charged that Thomas fired Collins for testifying unfavorably to the Sheriff in the *Barrett v. Thomas* trial. The complaint further alleged that Knowles and Bracey were discharged for their refusals to help Thomas retaliate against Collins for his testimony. After several weeks of heated discovery, the parties compromised their differences in a settlement agreement approved by the district court on June 25, 1979.

The settlement agreement provided for the reinstatement of each plaintiff to his former position with the Sheriff's Office and stipulated that "$7900.00 would be a fair and reasonable fee" for the services rendered by plaintiffs' counsel. The district court judgment approving the settlement accepted the stipulation and ordered that plaintiffs' counsel be paid $7900.00 as attorney's fees plus $918.25 in Court costs by Sheriff Thomas, in his official capacity and out of county funds under his control "pursuant to 42 *United States Code* § 1988, for which let execution issue if not paid promptly."

In this appeal, Dallas County raises two variants on the theme of § 1988 attorneys' fees awards against local governmental entities. First, is a county liable for a § 1988 fee award when it was not a named defendant? Second, assuming that a fee award does lie against the county treasury in these circumstances, what authority does a federal court wield, consistent with Fed.R.Civ.P. 69, to order county commissioners to pay a federal court judgment under pain of contempt? Later, in an August 1979 order, the district court specifically held Dallas County liable for the plaintiffs' § 1988 award and ordered Sheriff Thomas and the Dallas County Commissioners to pay the award from County funds allocated the Sheriff's Office or, in the alternative, from the County's general treasury. We affirm.

### The County's Liability

Section 1988 entitles prevailing plaintiffs in civil rights suits[1] to recover

---

1. Section 1988 applies to actions brought to enforce rights secured by 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986; by 20 U.S.C. §§ 1681 et seq.; and to actions brought by the United

their attorneys' fees unless special circumstances render the award unjust. *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978). The award may be overturned on appeal only if we determine that it represents an abuse of discretion.

Section 1988 authorizes awards to "prevailing parties," but a party need not win a judgment in order to prevail. A civil rights plaintiff may prevail under § 1988 by entering into a settlement vindicating the asserted civil right. *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980). Moreover, neither party challenges the quantum of the award fixed by the trial court. Thus, the focal point of this dispute is not the propriety of a § 1988 award or the quantum fixed by the trial court, but Dallas County's liability for the award.

Dallas County disclaims liability for the § 1988 award because it denies responsibility for Sheriff Thomas' personnel decisions. But, as we have determined in *Barrett v. Thomas*, 649 F.2d 1193 (5th Cir. 1981), Sheriff Thomas' personnel decisions constitute "acts or edicts [that] may fairly be said to represent official [County] policy." *Id.* at 1201, *quoting Monell v. New York City Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The § 1988 award against Thomas in his official capacity lies against the Dallas County treasury even though Dallas County was not named as a party in the plaintiffs' suit. *Hutto v. Finney*, 437 U.S. 678, 699, 98 S.Ct. 2565, 2578, 57 L.Ed.2d 522 (1978).

We perceive no special circumstances rendering a § 1988 award against Dallas County unjust. In the early stages of this lawsuit, Sheriff Thomas was represented by the district attorney for Dallas County under the statutory requirement of Tex.Rev. Civ.Stat.Ann. art. 332c (Vernon Supp.1980).

Had the County been named as a defendant, the district attorney would have functioned as defense counsel. Thomas substituted private counsel for the district attorney approximately six weeks prior to entering into the settlement agreement.[2] Nevertheless, the Sheriff continued to share the County's interests in disclaiming liability and in minimizing the amount of the plaintiffs' recovery. Dallas County charges by innuendo that Thomas and the plaintiffs colluded in the settlement to saddle the County with the § 1988a award. The record, however, discloses that the plaintiffs have diligently pursued Thomas' personal assets to satisfy their judgment. We cannot say that the trial court incorrectly applied the law or abused its discretion in holding Dallas County liable with Sheriff Thomas for the plaintiffs' attorneys' fees.

### Execution Against the County

Appellant next asserts that the district court's order requiring Dallas County to pay the plaintiffs' attorney's fees from county funds oversteps the Fed.R.Civ.P. 69(a) prescription that execution of federal court judgments "shall be in accordance with the practice and procedure of the state in which the district court is held. . . ." Citing Texas law forbidding execution on judgments against counties, Tex.Rev.Civ. Stat.Ann. art. 1575 (Vernon 1962), Dallas County maintains that a petition for a writ of mandamus in state district court is the exclusive avenue open to the plaintiffs for effectuating their § 1988 award against the county. *See National Surety Corp. v. Friendswood Independent School District*, 433 S.W.2d 690 (Tex.1968) (mandamus held to be the exclusive remedy for enforcing judgments against political subdivisions of the state).

---

States government to enforce the provisions of 42 U.S.C. § 2000d or the Internal Revenue Code.

2. The Record indicates that the Dallas County District Attorney's Office withdrew as Thomas'

counsel when a potential conflict of interest—stemming from the possibility that District Attorney's Office employees might be called to testify against Thomas in unrelated criminal proceedings—loomed on the horizon.

We reject this restrictive view of the power of federal district courts to enforce their judgments against Texas counties. In *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980), *rehearing granted on other grounds*, 636 F.2d 942 (1981), the State of Mississippi raised essentially the same arguments posed to this Court by Dallas County. Mississippi appealed a § 1988 award to the prevailing plaintiffs in litigation involving the State prison system. Noting that a Mississippi statute prohibited the satisfaction of judgments against the State in the absence of legislative authorization, Mississippi prison officials resisted payment of the § 1988 award on the ground that a federal district court had no authority to order state officials to make payment in violation of the State's statutory disbursement scheme. Writing for this Court, Judge Hill held, "It is now beyond dispute that a federal district court has the authority to order that attorney's fees be paid out of the state's treasury." *Id.* 616 F.2d at 1271.

The district court's authority to award attorney's fees is established by § 1988 which is a Congressional enactment pursuant to Section 5 of the Fourteenth Amendment. To the extent that § 1988's authorization of district court orders awarding attorney's fees conflicts with Texas' restrictions on the execution of judgments against counties, the federal statute must prevail over state law. U.S.Const. Art. VI, cl. 2. Fed.R.Civ.P. 69(a) specifies that state execution procedures are to be followed "except that any statute of the United States governs to the extent that it is applicable." Fed.R.Civ.P. 70 provides further authorization for the district court's order requiring Dallas County to pay the § 1988 award:

> If a judgment directs a party to ... perform any ... specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person.... The court may also in proper cases adjudge the party in contempt.

*Quoted in Gates v. Collier*, 616 F.2d at 1271 n.6.

The district court has ample authority to bind Dallas County by its order to require payment from County funds. The County may not successfully hide behind state procedural shields to avoid the consequences of a valid district court judgment effectuating an appropriate § 1988 award. *See Gates v. Collier*, 616 F.2d at 1270–72. *Cf. Gary W. v. State of Louisiana*, 441 F.Supp. 1121 (E.D. La.1977), *aff'd.*, 601 F.2d 240 (5th Cir. 1979) (federal district court has authority to order State of Louisiana to pay special master's fees and expenses necessitated by state's recalcitrance in complying with federal court order).

The District Court has acted within the scope of its authority and has not abused its powers. Its judgment is

AFFIRMED.

JOHN R. BROWN, Circuit Judge, concurring:

I concur fully in the Court's opinion upholding the voluntary settlement and imposing liability on the county (technically a non-party) for payment of the attorney's fees. As I did in my special concurring opinion in *Barrett v. Thomas*, 649 F.2d 1193 (1981) I would point out that this illustrates how taxpayers have to foot the bill for flagrant, spectacular unconstitutional acts of an officer-agent of the entity. Indeed, the more crass the conduct the more costly it is to the treasury and innocent unoffending taxpayers. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in its restrictive rejection of *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), never contemplated such a result.